We have three cases to be submitted today on oral argument, and we begin with United States v. Jean, Ms. Vysocky, Mr. Vysocky, excuse me. Good morning, your honors.  The district court's decision here, though well-meaning, was flawed. Pull that microphone a little bit. Thank you, your honor. And it was flawed because it was contrary to this court's decision in Escajeda. And Escajeda set forth basically three rules to get relief under the Compassionate Relief Statute. First, it has to be that the inmate has to show some severe exigency that was not foreseeable at the time of sentencing, and that was unique to the life of the prisoner, such as age, health of the inmate, a family member in severe distress, and the district court here recognized that Mr. Jean satisfied none of those conditions, yet he granted the motion anyway, again well-meaning. But it was almost as if the district court recognized that that was an impermissible basis to grant the motion based on the changes in the sentencing law, because the district court said that the changes in the sentencing law only formed one small part of its decision, and the only other part was rehabilitation, which of course can't be alone an extraordinary and compelling reason by statute. Was that language in the case you just mentioned, was that language essential to the holding in the case? It was, Your Honor, because Escajeda said that an inmate can use compassionate release only in those circumstances. Severe exigency unique to the life of the prisoner, not foreseeable at the time of sentencing. And where does the unique to the life of a prisoner language come from? In Escajeda, Your Honor. Is there a citation or anything for the use of that language? There was. I don't want to take up the use of your time, you can... Yeah, I'm sorry, Your Honor. I don't have the pinpoint there at the moment, but it did recite that, but that wasn't the only requirement. The second requirement was you can't use compassionate release to challenge the legality or the duration of the sentence. And here Mr. Jean tried to use compassionate release to do both. First for legality, any type of claim that the sentence that a defendant would receive today is different from the sentence he received at sentencing based on intervening judicial decisions necessarily implicates the legality or validity of the original sentence. And that's especially the case here because the underlying case that brought forth Hinkle and Tanksley was Mathis. And Mathis, as the Mathis court itself explained and as explained in other decisions, did not change the law. It was simply a clarification of the law. It explained what the career offender guideline meant before as well as after. And so in essence, the courts were getting it wrong just all those years and also at the time that Mr. Jean was sentenced in 2009. So it was a challenge to the legality of the sentence. And that's also shown by Mr. Jean's Section 2255 proceeding. Because there he directly said that his sentence was against the laws and constitution of the United States in light of Hinkle and Tanksley. And so any claim to be against the laws and constitution of the United States, that's necessarily a challenge to the legality of the sentence. And Mr. Jean, in the briefing on the compassionate release issue, for the first time, I believe it was the first time, after we brought forth Escajeda in supplemental briefing, then said, oh, well, we're not challenging the lawfulness of the sentence. We're just pointing to the change in the law issue. But Mr. Jean had earlier, in his 2255 proceeding, directly and explicitly challenged the legality of the sentence. He said that his sentence was against the law and constitution of the United States. Is there not a distinction between the non-retroactive law is the only reason, whereas there are other cases when it's one among several reasons? No, there is no distinction there, Your Honor, because Escajeda and the cases it relies upon, for example, Jenkins, Crandall, the Seventh Circuit decision in King, say that the non-retroactive changes in the sentencing law cannot be considered as a matter of law. So it doesn't matter how many other reasons that you add to that. It's essentially a zero. And so it just cannot, as a matter of . . . It's your position that the non-retroactivity of this one blots out every other reason. Oh, no, not at all, Your Honor. So for example, if Mr. Jean had pressed some sort of medical issue or, you know, his son was in, you know, dire medical distress, you know, about to die or something like that, of course those types of reasons could be considered in the extraordinary and compelling analysis. And in that event, too, then that's the gateway to the consideration of rehabilitation. And we don't dispute that Mr. Jean, in this case, presented an admirable record of rehabilitation. The problem was, as a legal matter, he could never get there because the non-retroactive changes could not be considered. And you also have in your favor, as I understand it, the unpublished McMarion case from this circuit? Correct, Your Honor. So is it fair to say that, scant though it is, that Fifth Circuit law in this regard unanimously favors the government's position? It is, Your Honor. And frankly, I'm kind of surprised when you see cases talk about the circuit split. But you don't, sometimes you don't see Escajeda there. And McMarion, though it's unpublished, it relied upon Escajeda for its holding and also relied on the D.C. Circuit's decision in Jenkins and the Sixth Circuit's en banc decision in McCall. So, yeah, of course. I noticed that this is, we don't see very many government appeals, I assume you don't have much blue paper in your file room to use for briefs because you're not the appellant. I'm not asking you for any kind of internal communications, but in general, as I understand it, it's difficult for a local U.S. attorney to get the approval of the Justice Department or the Solicitor General to file an appeal. Would that indicate the relative importance of the issue? I can't speak to that, but without telling us anything confidential. No, absolutely, Your Honor. And it was a challenge to get the colors for the briefs. But in terms of getting the Solicitor General's approval, normally it is difficult. In this case, it was easier than normal because the Department's taken a consistent position on this throughout the country, and I believe that they sought en banc rehearing in McCall and the Solicitor, an assistant, I think it's the Deputy Solicitor General himself, I believe, argued the en banc decision in McCall. So this is a very important issue to the Department. Mr. Gene's counsel called me after we filed a notice of appeal and we had a nice conversation and he just wanted to know, is there anything for your appeal that's specific to Mr. Gene that you have against him or you think he's a really bad person? It's not that. It's purely a legal issue. We think the district court got it wrong here, and it would be one thing if the district court had issued its decision when courts were kind of struggling over these issues, but I think after he was presented with Escajeda and after presented with McMarion to issue the decision, it's just flatly contrary to the stand that this court has taken. And the third rule of Escajeda is the habeas channeling rule. And in a sense, that label that Escajeda gave it is under-inclusive because it includes not only habeas slash 2255, but also direct appeal. The second sentence in Escajeda said that these types of claims, challenges to the legality of the duration of a sentence, must be channeled through direct appeal or on 2255. And Mr. Gene in his 2255 proceeding said that he wanted to present this issue before Mathis, before Hinkle, before Tanksley. He wanted to present this issue in the district court and on direct appeal, but was prevented from doing so by his attorney. And it would seem if that were the case, he would have had a potentially legitimate ineffective assistance of counsel claim to bring on 2255, and he tried, but he did that way too late. So he could have raised it before the district court, he could have raised it on direct appeal, and he did raise it in 2255, which is what the habeas channeling is all about. And it's no answer to say, as Mr. Gene does in his briefing, trying to make it look as if the government has taken some inconsistent positions because we argued in the 2255 proceeding that Mr. Gene's claim was not cognizable under 2255 because he was challenging the applicability of the guidelines or a guidelines error. That was correct, and the law in this court under Williamson is clear that you cannot bring those types of claims under 2255. But that doesn't mean he can turn around in the language of Escajeda and steer around 2255 strictures and bring the same type of claim under the compassionate release statute. You haven't referenced the Concepcion case. What impact does that have on this? In this case, Your Honor, we don't believe Concepcion has any relevance to this proceeding at this stage. Concepcion, of course, involved a completely different statute that Congress made explicitly retroactive, and that was the application of the Fair Sentencing Act to crack the case. The court had some pretty broad language in there about the discretion of the district court in this proceeding, didn't it? But that's only after the defendant satisfies the threshold for qualifying for relief. The First Step Act has explicit language making certain defendants that were convicted of crack cocaine offenses eligible for relief, just automatically. If they fall within that category, they're eligible, and Concepcion actually distinguished that from the compassionate release statute, which has language that makes it more difficult to get relief there, and that is the Extraordinary Compelling Reasons language in 3582C1A. So Concepcion did not say that you could consider changes in the law in determining whether an inmate satisfies that threshold of Extraordinary Compelling Reasons. In fact, cases like the King, Judge Easterbrook, in that case in the Seventh Circuit recognized that actually undermines the argument that Mr. Gene is making in this case because Concepcion distinguished the compassionate release statute from the First Step Act that was at issue there. Well, what do you do about the statement in Concepcion, it is only when Congress or the legislature and whether and to what extent to modify a sentence that a district court's discretion to consideration, to consider information is restrained? Yes, Your Honor, I would say that that exact language, Congress in the compassionate release statute did limit the scope of the types of things that can be considered through the Extraordinary Compelling Reasons language in 3582C1A. As the en banc Sixth Circuit McCall pointed out, the text of the compassionate release statute itself supports the categorical exclusion of non-retroactive legislation or judicial decisions. Well, would you agree that the district court has wide discretion in determining the information that is relevant to extraordinary and compelling analysis? It has discretion, Your Honor. I would say it's cabined by, one, what's in the statute, the Extraordinary Compelling Language, and how this court has authoritatively construed it. So especially after Escajeda and after McNary, and that discretion is governed by how this court has construed the statutory language. And just a case I'd like to point out is the Eighth Circuit's decision in Crandall, and it was one of the decisions that this court joined in Escajeda, and there it addressed this issue of, and it involved the very same challenge to the application of the career offender guideline based on Mathis, and the court there said those types of claims, these types of claims, are not subject to direct appeal or through 2255. But if you run into a procedural roadblock on 2255, on either the limitations period or the statute of limitations or the fact that a certain type of claim isn't cognizable on 2255, that doesn't mean you can bring an uncompassionate release. It just means you're out of luck, essentially, and it's just the balance between finality and error correction. Thank you, Your Honor. All right. Thank you, and you've saved time for rebuttal. All right. For the appellee, I'm going to ask you to pronounce your name, because I'm certain to mess it up, so. It's Haggy Gautian, Your Honor. Haggy Gautian. All right. Thank you. All right. All right. And please, the court, thank you, good morning. My name is Nadia Haggy Gautian. With me is my co-counsel, Jeannie Heffernan, and together we have the pleasure of representing Mr. Jean, who has, in fact, been out of prison and contributing to society since August of last year. Your Honors, the district court did not abuse its discretion in ordering the release of Mr. Jean under the unique circumstances here, which involve a harsh disparity of a decade created by a change in case law for a prisoner who nobody, not even the government, doubts is fully and extraordinarily reformed. All of this led the district court to find that under these individualized circumstances, having Mr. Jean serve another decade in prison would be pointless and unjust, and so he was released, Your Honors. Now sending an indisputably rehabilitated person back to serve a disparate sentence would produce a uniquely harsh and cruel result that Congress could not have intended in enacting Section 3582 and then expanding its use through the First Step Act. What do you do, what would you say if, assuming that Escoheta is not dictum, assuming that we're bound, that we were bound by Escoheta, which was obviously a decision of this court a year ago? Yes, Your Honors. We don't believe that there is any conflict between the district court's decision and Escoheta opinion. Escoheta purely just stands for the principle that if you have habeas claims, you need to be brought under the habeas statutes and not under compassionate release, and we understand that the government latches on to the description of challenging the legality or the duration of the sentence, but the key word in that phrase is challenge. We're talking about legally challenging the lawfulness of the sentence or a sentencing error committed in calculating the length of the sentence. We're seeking an automatic vacator, a mandatory vacator of the sentence because it was against the Constitution or against federal law. That's fundamentally different than compassionate release, which is a discretionary tool that applies to individual cases. It does not apply automatically. It appeals to the equitable discretion of the district court, and in fact, it's not retroactively applying anything, Your Honors. It is simply an individual modification in individual cases based on a discretionary standard where there are extraordinary and compelling reasons for that particular modification, and it is intended as a safety valve in exactly the cases like this where relief is not available under other statutes or under habeas, Your Honor. Well, I'll ask you what I ask your friend on the other side. Is there a distinction or shall we have two sets of facts, one where the non-retroactive law is the only reason and the other one, as in here, it's one of several reasons? Your Honor, I don't believe that the text of Section 3582 restricts changes in law from being considered, but I don't know if we need to create two separate rules of law because here the district court considered it in combination, which is consistent with how all of the other cases are considered, one of several factors that could be considered. I don't think we need to say that it alone could suffice. I think you still need to consider it in conjunction with the individual circumstances of the defendant, and that's the same way that cases like Rebel Caba and Chen, McGee, and McCoy have approached the situation. It's a combination. I don't think we need to rule that it would alone satisfy. I'm certainly not forecasting anything, but if we did not affirm the district court today, would you be able to file another motion for compassionate release and potentially succeed? I don't think there's anything that would preclude Mr. Jean from filing another motion for compassionate release, but we don't believe that that is an effective way to resolve this issue because it is a legal issue and because we believe that the district court got it right. There's no textual basis for limiting the factors that he considered, that it's distinguishable from the McMarion decision, and it's not inconsistent with Escajeda. We think he got it right. There are practical impacts of reversing and having him refile the motion. I think he would have to be returned to custody. He's living, has a job, is taking care of his mother. He's been out since August, so for the last 10 months, he's been building his life back up. I think he would need to be remanded back to custody and then appealed to his warden again. It exhausts administrative remedies, potentially. He would refile the motion, do the briefing, and then likely end up back litigating the same legal issue under the new policy statement, Your Honor. Have any other courts concluded that an unusually long sentence can support a finding of extraordinary and compelling reasons? If we're talking about the standard in the new criteria, I think there are some district courts that have already ruled on that, the new criteria, but for changes in law generally and the disparity created by a change in law, there are other sister circuits that have ruled that it does, it can contribute to a finding, maybe not on its own, but when looking at the individual impacted, it does satisfy. I believe, Your Honor, those circuits . . . apologies, Your Honor. Those cases include United States v. Rebel-Caba, United States v. Chen, United States v. McGee, and United States v. McCoy. There are other circuits that have found it can be considered and that it weighed in favor, or the district court did not abuse its discretion in finding that it was convinced to grant the motion. What is your response to your friend on the other side's characterization of the Concepcion case and its impact on this case? Yes, Your Honor. I do believe . . . I recognize that Concepcion was a case that involved a different statute, but we do think it applies by analogy to our case, and it does have pretty explicit language about not . . . about a district court's discretion not only being bound when Congress or the Constitution expressly limits the type of information that the court may consider in modifying a sentence, and that this discretion carries through post-sentencing to later proceedings that may modify an original sentence. We think that language applies in this context, and even the facts apply by analogy. So, Concepcion involved Section 404 of the First Death Act, which, like Compassionate Release Statute, is an explicit mechanism that grants the court the discretion to revisit the sentence, so they're both the same in that way. Both statutes are silent about intervening changes in law or fact, but the Supreme Court said that despite Section 404 being silent about changes in law, the court could consider it in determining the relief granted. So, we think by analogy, the same treatment should apply here based on the reasoning in reading . . . meaning from silence in statutes where there's no expressed limitation. Our position is that if Congress had intended changes in law to not be eligible for consideration, it could have or should have included that limitation in the statute but didn't. It only included a single limitation that rehabilitation alone cannot suffice, but did not restrict other factors that could be considered, Your Honor. I think, just to follow up on what Judge Munoz said earlier, the court also said that the only limitations on the court's discretion should be from something that is set forth by Congress in the statute or by the Constitution. Is that right? Yes, Your Honor. We don't have that in this case, or do we have that in this case? So, the only limitation that Congress has provided is in, I believe it's Section 994T that says rehabilitation alone can't suffice to qualify, but left, actually left the sentencing commission, a delegate of the sentencing commission to provide the example. So, Congress elected not to provide an explicit definition of extraordinary and compelling reasons, delegated to the commission to expand on that description, which they have in the policy statement. Even the amended policy statement further supports our view because the commission has now spoken in adding unusually long sentence as a specifically recognized basis for relief. And that was there under the authority of Congress to do that, and we believe that because Congress has spoken, and that Marion didn't have the benefit of Congress's amended policy statement, that should now control how we're interpreting the phrase extraordinary and compelling reasons. And that was, that amendment was in November of 23, is that right? It went into effect in November of 2023, yes, Your Honor. In fact, there was, I believe there's a recent district court case out of the Eastern District of Louisiana that only came out a couple of months ago called United States v. Bolton. And the citation for that is 2024 WL19664448. But it analyzes in depth the commission's authority to adopt the amended guide, the amended policy statement, and provides support for why that expanded definition or description should control and reasons that the commission and not the courts are the ones who should revolve the split over the guidelines. It is, we agree with that opinion. I know that that issue is not ripe in this appeal because the district court did not use it as a basis for granting Mr. Jean's motion, but we still believe that the amended policy statement is highly relevant and highly probative on the issue of what factors did the commission intend could be considered in this discretionary mechanism. Judge Douglas, there was a question that you asked to the government that I would like to expand on regarding the basis for Escajeda's description of extraordinary and compelling reasons. So when it says that a prisoner can only seek relief under Section 3582 when they face some extraordinary severe exigency not foreseeable at the time of sentencing and unique to the life of the prisoner, Escajeda cites the Chambliss opinion. And if you go and look into Chambliss, it seems that Escajeda, that articulation of what extraordinary and compelling reasons is, is not actually supported by the Chambliss decision. Chambliss does not, for example, support the severe exigency requirement. Nowhere does it use the word exigent. When it talks about severity, it's only discussing it in connection with the conduct that led to the defendant's imprisonment. Chambliss also does not say anything about the need for the ground to have been unforeseeable at the time of sentencing. And actually to require unforeseeability would run counter to the policy statement, Section 1B1.13e, which expressedly states that grounds need not have been unforeseeable. But regardless, even under that, to Chambliss... Not to Chambliss, to the... Oh, to the policy... It's Section... I think it's USSG 1B1.13 subsection e, like elephant. But regardless, even if we take Escajeda's description at face... And the court did consider Escajeda and its articulation of extraordinary and compelling reasons. Mr. Jeans still meets that description. As to unique to the life of the prisoner, the district court found that he suffered from a unique and individualized sentencing disparity after the Tanksley and Hinkle decisions. And also demonstrated a unique, wholly extraordinary level of reformation, unlike anything that the district court had ever seen, including with letters submitted by BOP officers and direct testimony from Mr. Jeans at our motion hearing. As to the individual sentence disparity, it is true that changes in law may apply to a wide number of prisoners, but they will affect prisoners differently and sometimes vastly differently. And here it created nearly a decade of disparity, and that is different than a case where a change in law would result in essentially the same sentence or maybe a change of days or months. Even the change in law can uniquely affect an individual prisoner when you're looking at that person and their sentence. As the district court found in ROA.471, if Mr. Jeans were sentenced in today's post-Hinkle and Tanksley world with the exact same conduct, he would not be sentenced as a career offender and would instead be sentenced today to a total of 160 to 185 months instead of the 292 months that he received, which represents nearly a decade and 40 to 50% reduction in his sentence. And his circumstances are even more compelling today because he has been released. He has been living in society for the last year or 10 months. Working, caring for his 82-year-old mother. He has a car, obtained insurance. He's paying taxes. He built his mother a walk-in closet. Just sending him back to prison under these circumstances for another almost decade, as the government urges, is simply unjust and makes no sense in criminal justice, Your Honors. Regarding Escohita's quote-unquote requirement that it not be foreseeable at the time of sentencing, we still believe that this criteria is satisfied. As to the change in law, we don't believe that it was foreseeable that the court would correct the interpretation of the guidelines seven years after his conviction. Granted, I practice patent law, so I'm not highly in the trenches on criminal matters, but I understand that this is a highly litigated, tricky area of criminal law. And I don't think it can be said that the sentencing courts foresaw that the interpretations would change because they continued for years to apply what we now know as an incorrect standard. And I don't think it can be said that the government foresaw it since they advocated against it, against the new interpretation. And certainly, his wholly extraordinary, indisputed rehabilitation could not be foreseen. Everyone who was incarcerated obviously wants to rehabilitate, but very few, if any, ever do to such an extent that BOP officers would write letters to the district court to advocate for compassionate release. That's not something that could have been foreseen, and certainly not something that could have been raised in an appeal, Your Honors. And then as to the severe exigency requirement, to the extent that is required, which we believe is not supported by Chambliss at all, during his testimony to the court, he spoke about his mother, who's in her 80s, and his relationship with his children. Ten years from now, she may no longer be alive. He may no longer have the opportunity to meaningfully influence the lives of his children. So we do believe that there was evidence in the record that the court considered that met even Escajeda's standard, which means that the district court did not abuse its discretion in granting his motion. In sum, the district court correctly recognized that Mr. Gene is exactly the type of defendant for whom Congress, the commission, and several of our sister circuits believe discretionary sentence reductions are appropriate. And in preparing for this argument, I was reminded of a passage from, I believe it's one of your cases, Judge Smith, that said, the defendant's name was Williamson. It said, fundamentally, leaving Williamson incarcerated for 30 years when he should have been sentenced to no more than 15 under existing precedent, quote, seriously would affect the fairness, integrity, and public reputation of judicial proceedings by undermining the rule of law. And I know that this is a different context, but the government's position here threatens the same ideals of fairness, integrity, and public trust in criminal justice. But thankfully, the text of the statute, McMarion, Escajeda, none of them precluded the district court's exercise of discretion here. So we would respectfully ask that the court affirm. Thank you, Your Honors. All right. Thank you. And in particular, we appreciate your firm's being willing to take this on. Both sides have done a good job of giving us concise briefs and good arguments, and we appreciate that. And Mr. Zaske for Riveau? First, just on the issue of the justice of this, of course, we think that the district court never should have granted the motion in the first place, and so Mr. Jean should not have been released. In the same day that this district judge denied our motion for reconsideration of the grant of compassionate release, the same judge rejected a report and recommendation from a magistrate judge that recommended granting compassionate release based on this same issue, the non-retroactive changes there involved to the drug statutes under the First Step Act. And that defendant was serving a life sentence. This judge rejected that report and recommendation, cited McMurion, saying that we can't consider non-retroactive changes. And that's . . . it comes from our district. It's a 92K1 Beaumont 92CR40 is the case number in that case. And it's not fair to those defendants who have had their motions denied when the district judges have followed the law. That's what's not fair. Mr. Jean received . . . it was a long sentence. It wasn't as long as some of the defendants that are sentenced under 924C, sentence stacking. Some of those defendants have non-violent offenses, over 100 years of imprisonment. Mr. Jean received 292 months for two counts and received a significant variance. If the motion had been decided after November 1, 2023, do you think the government would have appealed it? You mean after the amendments took effect, Your Honor? Probably so, Your Honor, because I'm not sure if this issue has come up yet, but the department is taking the position that 1B1 13B6, the unusually long sentence provision of the guidelines, is legally invalid because it exceeds the commission's authority and runs contrary to how this court has authoritatively construed the statutory language. So I can't speak to it because of what Judge Smith was saying about the complex process of getting these things appealed. Do you foresee that you're going to have to order much more blue paper? Well, it depends. It might be red paper. It just depends on how it comes up to the court. But I would imagine that issue, this court will face it at some point. And I know courts have gone both ways on that so far. And, Your Honor, counsel pointed out the question that you asked about where that language was in Escajeda, and I appreciate that. That language came from Chambliss, but the district, I mean, I'm sorry, the Escajeda panel also relied on just the ordinary and plain meaning of the terms extraordinary, compelling, citing Webster's Dictionary, and also the D.C. Circus. Is there a response to the other side's argument that the language in Chambliss doesn't support those statements? Well, Chambliss didn't address that precise question, but it did recognize that ordinarily that's what compassionate release is used for. And it goes to Escajeda's broader point that there are really two paths for post-conviction relief. There's one path, the 2255 path, where you're challenging the legality or the duration of the sentence, and then there's a separate path, the compassionate release path. And there's a contradistinction, as Escajeda said, between those two paths, and they can't bleed together. And when they do bleed together, you lead to the problem of undoing the Sentencing Reform Act. And Mr. Gene, in his brief, actually acknowledges that the compassionate release statute essentially allows district courts to consider all of the considerations that are in place under the old federal parole system. And as Judge Cox has explained in Jenkins, the Sentencing Reform Act did not contain the seeds of its own destruction. To say that we're abolishing federal parole, but then allow through the compassionate release statute district courts to consider everything that could have been considered under the old parole system, it just makes no sense. And in terms of the opposing side mentioned that, well, the only limitation is consideration of rehabilitation of loan. That's the only statutory prohibition on compassionate release. And I would just refer the court in my limited time to the McCall case, that's the Sixth Circuit en banc case, at 1062 to 1063, and it explains, based on the context and common sense and the text of the statute, why that negative implication should not apply. And I see my time is up. Your Honor, thank you for your time. Thank you, Mr. Mussovsky. Your case is under submission. Next case, Ambler v. Nissen.